UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ARVIL RUNYON,

       Plaintiff,

v.                                Civil Action No. 2:12-1394

LONNIE HANNAH, in his individual
capacity and official capacity as
Sheriff of the Mingo County Sheriff's Dept.,
JOE SMITH, in his individual capacity and
official capacity as Sergeant of the Mingo
County Sheriff's Dept.,
MICHAEL MILLER, in his individual capacity
and official capacity as a Deputy of the Mingo
County Sheriff's Dept., and the
MINGO COUNTY COMMISSION, a political
subdivision of the State of West Virginia,

       Defendants.

MEMORANDUM OPINION AND ORDER

       Pending are a motion for partial summary judgment filed by the plaintiff on February 6, 2013, and a motion for summary judgment filed by individual defendants Hannah, Smith, and Miller on February 7, 2013.

I.  Factual and Procedural Background

       On February 21, 2012, the plaintiff, Arvil Runyon, Sr., visited the Mingo County Sheriff's Department, intent upon securing the release of his impounded vehicle.  Compl. ¶¶ 9-11. He met with defendant Lonnie Hannah, then sheriff of Mingo

County,[1] in his office in the Mingo County Courthouse.  The sheriff was unable to locate the vehicle's keys.  Pl.'s Mot. for Partial Summ. J. and Att'ys' Fees ("Pl.'s Mot.") Ex. B, at 4.  The parties offer divergent descriptions of subsequent events.

The plaintiff claims that after "a brief exchange of words" with defendant Hannah, he was forcibly escorted to the door by defendant Joe Smith, a sergeant with the Mingo County Sheriff's Department.  Compl. ¶¶ 12-15; Pl.'s Mot. Ex. C, at 3.  Defendant Smith's grip was allegedly so strong that "blood was running down . . . [the plaintiff's] arms."  Pl.'s Mot. Ex. A, at 9.  According to the plaintiff, he was then deprived of his cane and dragged down the hallway by defendant Smith, defendant Michael Miller, a deputy with the Sheriff's Department, and an unidentified third officer.  Id.  The plaintiff claims to have been choked, beaten, slammed to the ground, and pinned with his arms twisted painfully behind his back, all without provocation.  Id. at 9-10; see also Compl. ¶¶ 18-24.

The defendants, however, portray the plaintiff as incensed, spewing colorful epithets and inviting defendant Hannah to "step outside and take off his gun and badge."  See

---

[1] Defendant Hannah served as sheriff at all times relevant to this matter.  See Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. and Att'ys' Fees ("Pl.'s Mem.") 2 n.1.  Having held office for two consecutive terms, he was precluded from seeking a third term in the most recent elections.  Id.

Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.")

Ex. C, at 4.  According to defendant Smith, the plaintiff

continued his tirade in the hallway outside the sheriff's

office, refusing repeated requests to leave the courthouse and

eventually prompting defendant Smith to issue him a citation for

"profanity, swearing, [and] obstructing an officer."  Id. Ex. C,

at 4-5.  When informed of the citation, the plaintiff allegedly

pushed defendant Smith, raised his cane, and threatened to

"'knock . . . [his] f.....g brains out' [or] something to that

effect."  Id. Ex. C, at 5.  The defendants contend that a

struggle ensued as deputies attempted to relieve the

recalcitrant plaintiff of his cane.  Id. at 3.  Officers were

purportedly forced to bring the plaintiff "to the ground," given

his continuing resistance to being handcuffed.[2]  See id.

---

[2] The parties have each submitted video recordings of the initial
confrontation between the plaintiff and the deputies.  See Pl.'s
Mot. Ex. H; Defs.' Mem. Ex. F.  The recordings, which lack
audio, corroborate the version of events presented by the
defendants.  The plaintiff, for example, can be seen repeatedly
exchanging words with defendant Smith and ignoring his apparent
exhortations to continue walking down the hallway.  See, e.g.,
Defs.' Mem. Ex. F, clip "joe 1st floor," at 0:20-1:45.  During
the final such exchange, the plaintiff resists defendant Smith's
attempts to seat him on a bench, placing his hand on the
deputy's chest and suddenly gripping his cane with both hands.
Id. at 1:50-2:00.  The plaintiff then vigorously resists for
almost thirty seconds as defendant Smith and two other officers
attempt to remove the cane from his grasp.  Id. 1:55-2:35.
After a brief respite, during which the plaintiff appears to
confer with the officers, he can be seen struggling as deputies
attempt to handcuff him.  Id. at 3:00-4:00.  The plaintiff

Neither party disputes that the plaintiff was eventually arrested for battering an officer, requiring him to be arraigned before a magistrate.  See Compl. ¶ 27; Defs.' Mem. 3.  The magistrate's court was located next door on the third floor of the adjacent Memorial Building.  Integrated Pretrial Mem. 13.  Defendants Smith and Miller, among others, transported the plaintiff to the Memorial Building.  The parties concede that the plaintiff was provided with a wheelchair, as his various disabilities prevented him from walking without a cane.  Compl. ¶¶ 25-27; Defs.' Mem. 3; see also Pl.'s Mot. Ex. A, at 23.  Defendants Smith and Miller then exited the courthouse with the plaintiff, wheeling him to the rear entrance of the Memorial Building.  Pl.'s Mot. Ex. C, at 6.  Upon arriving at the Memorial Building, the plaintiff and the transporting officers were informed that the primary elevator was inoperative and that the secondary elevator[3] provided no access to the third floor, on which the magistrate's chambers were located.  Id.

Again, the parties offer contrasting accounts of the events that followed.  Defendants Smith and Miller state that they offered to have the plaintiff arraigned in the basement, so

ceased resistance only after officers laid him on the ground and cuffed his hands behind his back.  Id. at 4:00-4:30.

[3] During the deposition of defendant Smith, the secondary elevator was alternately referred to as a "service elevator" and a "handicapped elevator."  See Pl.'s Mot. Ex. C, at 6.

that he might avoid ascending several flights of stairs to the magistrate's usual courtroom.  See Joint Resp. of Defs. to Pl.'s Mot. for Summ. J. ("Defs.' Joint Resp.") Ex. B, at 2; Defs.' Mem. Ex. C, at 6.  Both defendants agree that the plaintiff refused the proposed accommodation, declaring himself able to use the staircase with some assistance from the deputies. Defs.' Joint Resp. Ex. B, at 2; Defs.' Mem. Ex. C, at 6. Defendants Smith and Miller state that the plaintiff traversed the stairs without incident, using the handrail to support himself.  Defs.' Mem. Ex. C, at 6; id. Ex. D, at 5.

The plaintiff denies being offered an alternate location for his arraignment, but acknowledges agreeing to use the stairs if the deputies would provide him with his cane and time to rest.  Pl.'s Mot. Ex. A, at 12.  He accuses defendants Smith and Miller of repeatedly kicking, pushing, and shoving him in the stairwell.  Id.

Once before the magistrate, it is undisputed that the plaintiff pled guilty to battering a police officer.  See id. Ex. A, at 13.

On May 3, 2012, the plaintiff initiated suit in the United States District Court for the Southern District of West Virginia.  The complaint pleads four causes of action.  Count I

alleges negligent training and supervision under state law.[4]
Compl. ¶¶ 33-37.  Count II  asserts a violation of 42 U.S.C. §
1983 arising from the use of purportedly excessive force by
defendants Smith and Miller.  Compl. ¶¶ 38-43.  Count III sets
forth a claim pursuant to Title II of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Count IV raises
a similar claim under the Rehabilitation Act of 1973, 29 U.S.C.
§ 794(a).  Compl. ¶¶ 44-56.  28 U.S.C. § 1331 vests the court
with original jurisdiction over the federal claims and 28 U.S.C.
§ 1367(a) grants supplemental jurisdiction over the sole cause
of action arising under state law.

        The plaintiff has moved for partial summary judgment
with respect to the alleged violations of the ADA, 42 U.S.C. §
12132, and the Rehabilitation Act, 29 U.S.C. § 794(a), in Counts
III and IV.  The three individual defendants have moved for
summary judgment with respect to the negligence cause of action
and the potential violations of 42 U.S.C. § 1983 in Counts I and
II.

_____

[4] Count I is drafted broadly, setting forth numerous instances of
"negligence."  See Compl. ¶ 35 (alleging, among other things,
negligent failure to comply with the state and federal
constitutions).  The subsequent arguments of the parties,
however, suggest that Count I was intended primarily to assert a
claim for negligent training and supervision.

## II.  Analysis

### A. Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23.  A party is entitled to summary

judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

**B.  The Plaintiff's Motion for Partial Summary Judgment**

The plaintiff requests summary judgment with respect to the claims brought under the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794(a), arguing that by failing to arraign him in the basement of the Memorial Building housing the magistrate, the defendants did not reasonably accommodate his disability.  Pl.'s Mem. 17-21.  In response, the defendants note the concurring testimony of Deputies Smith and Miller, which indicates that the plaintiff expressly refused to be arraigned in the basement.  Defs.' Mem. 8-11.

The ADA is intended to "provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(2).  Title II of the Act, 42 U.S.C. §§ 12131-12165, under which the plaintiff frames his claim, prohibits discrimination by public entities.[5]  The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a

---

[5] Title I, 42 U.S.C. §§ 12111-12117, governs discrimination claims involving various aspects of employment.  Title III, 42 U.S.C. §§ 12182-12189, bars discrimination by public accommodations.

public entity, or be subjected to discrimination by any such entity." Id. § 12132.

The Rehabilitation Act of 1973 contains analogous language, stating that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

The substantial similarities between Title II of the Americans with Disabilities Act and the Rehabilitation Act generally permit alleged violations of the two statutes to be analyzed jointly.[6] Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty., 673 F.3d 333, 336 n.1 (4th Cir. 2012) (citing Doe v.

---

[6] The statutory requirements, however, are not identical. See Paulone v. City of Frederick, 787 F. Supp. 2d 360, 370-71 (D. Md. 2011). The Rehabilitation Act, for example, establishes a stricter standard of causation than Title II. Id. Furthermore, the Rehabilitation Act is more limited in scope, applying only to federal agencies and non-federal programs or activities that receive federal funding. Id. at 371. In contrast, a cause of action under Title II may be asserted against any public entity. Id. In this case, the documents cited by the plaintiff to prove that the Mingo County Commission and Sheriff's Department received federal funding contain no such evidence. See Pl.'s Mem. 11-12 (citing Exhibit E, interrogatories 1 and 2, which make no mention of federal funding). The court need not address the potential insufficiency, however, given the three defendants' concession that both acts are applicable. Defs.' Joint Resp. 8.

Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264 (4th Cir. 1995)); Baird ex rel. Baird v. Rose, 192 F.3d 462, 468-69 (4th Cir. 1999). Discrimination under Title II, and presumably the Rehabilitation Act, includes the "failure to make reasonable accommodations." See A Helping Hand, LLC v. Balt. Cnty., Md., 515 F.3d 356, 362 (4th Cir. 2008) ("[C]ourts have construed Title II of the ADA to allow a plaintiff to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations."); Rogers v. Dep't of Health & Envtl. Control, 174 F.3d 431, 433-34 (4th Cir. 1999) (permitting the application of relevant Rehabilitation Act precedent to claims arising under Title II); Paulone, 787 F. Supp. 2d at 371 (assuming the preceding definition of discrimination applicable to claims under both Title II and the Rehabilitation Act); see also Waller v. City of Danville, Va., 556 F.3d 171, 174 (4th Cir. 2009) (citing Gohier v. Enright, 186 F.3d 1216, 1220-21 (10th Cir. 1999); Gorman v. Bartch, 152 F.3d 907, 912-13 (8th Cir. 1998)) (noting that "in the context of arrests, courts have recognized two types of Title II claims . . . [the pertinent one here being] reasonable accommodation, where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees").

Moreover, regulations promulgated under both the ADA and the
Rehabilitation Act require reasonable accommodations or
modifications to be made for those with disabilities.  <u>See</u> 28
C.F.R. §§ 35.130(b)(7), 41.53.

        Determining whether an accommodation is reasonable
"requires a fact-specific, individualized analysis of the
disabled individual's circumstances." <u>Wong v. The Regents of
the Univ. of Cal.</u>, 192 F.3d 807, 818 (9th Cir. 1999) (citing
<u>Crowder v. Kitagawa</u>, 81 F.3d 1480, 1486 (9th Cir. 1996)); <u>see</u>
<u>Pandazides v. Va. Bd. of Educ.</u>, 13 F.3d 823, 833 (4th Cir. 1994)
(declaring the various elements of a Rehabilitation Act claim
alleging employment discrimination, including the reasonableness
of any accommodations, to be questions of fact).

        In this case, the parties vigorously dispute whether
any accommodation was offered.  The plaintiff contends that,
once the elevator was discovered to be inoperative, he was given
no choice but to climb several flights of stairs.  Pl.'s Mot.
Ex. A, at 12.  Conversely, defendants Smith and Miller testified
that they offered to have the plaintiff arraigned in the
basement, <u>see</u> Defs.' Joint Resp. Ex. B, at 2; Defs.' Mem. Ex. C,
at 6, an accommodation the plaintiff concedes would have been
reasonable, <u>see</u> Pl.'s Mem. 17-18.  The court, then, is presented
with a genuine dispute as to whether the plaintiff was extended

an accommodation, an essential element of the cause of action
asserted.

          The plaintiff's motion, which essentially requests
that the court weigh evidence and make determinations concerning
the credibility of the defendants' testimony, disregards well-
established legal principles to which this court must adhere.
See Russell, 65 F.3d at 1239 ("The court's function at the
summary judgment stage is not 'to weigh the evidence and
determine the truth of the matter but to determine whether there
is a genuine issue for trial.'" (quoting Anderson, 477 U.S. at
252)); Sosebee, 797 F.2d at 182 (precluding the court from
making determinations of credibility); Charbonnages de France,
597 F.2d at 414 (stating that the party opposing summary
judgment is entitled to have his or her version of the facts
accepted as true and to have all internal conflicts resolved in
his or her favor).  Given the genuine dispute concerning a
material fact, summary judgment is inappropriate.  See Fed. R.
Civ. P. 56(c).

          The plaintiff briefly contends that Rule 5 of the West
Virginia Rules of Criminal Procedure, which mandates that
arresting officers "shall take the arrested person without
unnecessary delay before a magistrate," W. Va. R. Crim. P.
5(a), somehow deprives officers of the ability to communicate

with disabled arrestees concerning the extent of their
disabilities and the potential need for accommodation.  Pl.'s
Mem. 19-20.  The plaintiff's conclusion is both unsupported by
precedent and undesirable as a matter of public policy.  Cf. 28
C.F.R. § 35.160(b)(2) ("In determining what types of auxiliary
aids and services are necessary, a public entity shall give
primary consideration to the requests of individuals with
disabilities.").  Accordingly, his motion for partial summary
judgment with respect to the claims asserted in Counts III and
IV under Title II of the ADA and the Rehabilitation Act is
denied.

C.  The Defendants' Motion for Summary Judgment

        The three individual defendants have moved for summary
judgment with respect to the claims asserted in Counts I and II
under 42 U.S.C. § 1983 for excessive force and the claim of
negligent training and supervision.

1.  Count II - 42 U.S.C. § 1983 and Excessive Force

        The defendants assert that summary judgment concerning
the alleged civil rights violations is appropriate because the
force exerted upon the plaintiff was objectively reasonable
under the governing interpretation of the Fourth Amendment.
Defs.' Mem. 5-13.  In response, the plaintiff contests the

                                14

defendants' characterization of the relevant events and argues that summary judgment is an improper mechanism for resolving the factual disputes in issue. Pl.'s Resp. 1-8. The plaintiff suggests that the protections of the Fourth Amendment, which relate to the arrest, do not extend to allegations of excessive force subsequent to an arrestee being taken into custody. Id. at 7-8. The plaintiff asserts that although his claim of excessive force during his arrest must be analyzed under the Fourth Amendment, his claim that he was accosted by defendants Smith and Miller a second time, while in custody, in the stairwell of the Memorial Building is subject to scrutiny under the Fourteenth Amendment. Id. at 7-8. The defendants filed no reply.

Any person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another of "any rights, privileges, or immunities secured by the Constitution and laws" may be held civilly liable.[7] 42 U.S.C. § 1983. The federal statute itself, however, creates no substantive rights. Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3

---

[7] Municipalities, such as the defendant Mingo County Commission, are "persons" subject to suit under § 1983. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). The court need not address municipal liability under § 1983, however, as the Mingo County Commission has not moved for summary judgment.

(1979)).  Addressing allegations of excessive force under § 1983 requires first "identifying the specific constitutional right allegedly infringed by the challenged application of force." Id. at 394.  In this case, the plaintiff contends that he was subject to excessive force both during his arrest and while detained before arraignment.  Pl.'s Resp. 5-8.

a.  Excessive Forcing During Arrest

The Fourth Amendment guarantees freedom from unreasonable seizures.  Lowery v. Stovall, 92 F.3d 219, 222 (4th Cir. 1996).  Seizures effected by force may be declared unreasonable, depending upon "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the arrestee] is actively resisting arrest or attempting to evade by flight." Id. (quoting Graham, 490 U.S. at 396).  The application of force must be judged objectively "from the perspective of a reasonable officer on the scene."  Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  Moreover, the court should remain cognizant that "officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."  Id. at 396-97.

First, regarding the severity of the crime at issue,
it is undisputed that the plaintiff was arrested for and pled
guilty to battering a police officer, a crime involving physical
violence.[8]  Pl.'s Mot. Ex. A, at 13.  Second, given the admitted
battery, the plaintiff presented an immediate threat to the
defendants.  Although he contends that his infirmities
essentially rendered him harmless to the able-bodied deputies,
see Pl.'s Resp. 7, video recordings of the plaintiff's initial
arrest depict a vigorous struggle, with three officers
eventually being required to subdue the plaintiff and relieve
him of his cane.  See, e.g., Defs.' Mem. Ex. F, clip "joe 1st
floor," at 1:55-2:35.  Third, the same recordings show the
plaintiff continuing to intermittently resist arrest until
placed on his stomach and handcuffed.  Id. at 3:00-4:00.  The
videos provide no indication of the gratuitous violence,
including being choked and kicked, that the plaintiff complains
of during his initial arrest.  Although the court must generally
accept as true the factual narration of the party opposing
summary judgment, see Charbonnages de France, 597 F.2d at 414,
it need not adopt a version of the facts that is "blatantly

---

[8] The plaintiff now insinuates that he was not actually guilty,
suggesting that his plea was instead the result of intimidation,
poor literacy, and lack of counsel.  Pl.'s Resp. 4.  Judicial
estoppel may well preclude the plaintiff from tacitly protesting
his innocence.  See Lowery, 92 F.3d at 223-24.  The court need
not decide the issue, though, as the defendants have not
asserted the doctrine.

contradicted by the record." Scott v. Harris, 550 U.S. 372, 380
(2009) (concluding, in the context of a § 1983 claim alleging
excessive force, that the Eleventh Circuit erred by not giving
dispositive weight to video evidence discrediting a plaintiff's
"fictional" account of a high-speed chase).  Thus, all three
factors indicate the defendants' application of force during the
initial arrest was reasonable under the circumstances.
Accordingly, because no rational fact-finder could conclude
otherwise, the defendants' motion for summary judgment with
respect to the claims of excessive force arising from the
plaintiff's initial arrest is granted.

b.  Excessive Force Subsequent to Arrest

        The Fourth Amendment applies only to "the initial act
of seizing." Riley v. Dorton, 115 F.3d 1159, 1163 (4th Cir.
1997) (quoting Wilkins v. May, 872 F.2d 190, 192 (7th Cir.
1989)), overruled on other grounds by Wilkins v. Gaddy, 559 U.S.
34 (2010).  Indeed, the Fourth Circuit has expressly repudiated
the notion that the Fourth Amendment's protections extend to
"the period the suspect remains with the arresting officers"
before arraignment.  See id. at 1163-64.  Instead, pretrial
detainees must bring claims of excessive force under the
auspices of the Fourteenth Amendment.  Id. at 1166.  Under the
Due Process Clause of the Fourteenth Amendment, excessive force

18

involves the infliction of "unnecessary and wanton pain and suffering." <u>Orem v. Rephann</u>, 523 F.3d 442, 446 (4th Cir. 2008) (quoting <u>Taylor v. McDuffie</u>, 155 F.3d 479, 483 (4th Cir. 1998), <u>overruled on other grounds by</u> <u>Wilkins</u>, 559 U.S. 34). The court must consider "such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Id.</u> (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.1973)).

In their motion for summary judgment, the defendants seem incorrectly to assume that the Fourth Amendment governs the plaintiff's allegations that defendant Miller and Smith physically abused him in the stairwell of the Memorial Building, subsequent to his arrest. <u>See</u> Defs.' Mem. 5-10. Moreover, even after the plaintiff highlighted the point, <u>see</u> Pl.'s Resp. 7, the defendants failed to frame their arguments concerning the allegations of excessive force during pretrial detainment, or their qualified immunity from the attendant Fourteenth Amendment violations, under the proper constitutional rubric.[9] Thus, the

---

[9] The defendants' initial decision to address the plaintiff's claims of abuse during pretrial detainment under the Fourth, rather than Fourteenth, Amendment may be due, in part, to the

defendants have failed to establish their entitlement to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a). Accordingly, the defendants' motion for summary judgment with respect to the claims concerning any abuse suffered by the plaintiff, while in custody, in the stairwell of the Memorial Building is denied.

2.  Count I - Negligent Training and Supervision

        The three individual defendants have moved for summary judgment with respect to the Count I causes of action for negligent training and supervision.  The defendants raise a general argument that the plaintiff has failed to produce sufficient evidence of negligent training or supervision, and specifically argue that defendants Miller and Smith received both academy training and written instructions governing the use

---

manner in which the complaint is drafted.  Although the initial paragraph of the complaint references § 1983 and both constitutional amendments, <u>see</u> Compl. ¶ 1, the section of the pleading that sets forth the excessive force claims specifically references only the Fourth Amendment, <u>id.</u> ¶¶ 38-43.  The first unambiguous indication that the plaintiff asserts a concurrent violation of the Fourteenth Amendment arguably appears in his response to the defendants' motion for summary judgment.  <u>See</u> Pl.'s Resp. 7-8; <u>cf.</u> <u>Bridgeport Music, Inc. v. WB Music Corp.</u>, 508 F.3d 394, 400 (6th Cir. 2007) (citing multiple decisions) (stating that new claims or theories cannot be asserted in response to a motion for summary judgment).  The defendants, however, in their reply have not challenged the plaintiff's assumption that his pleading properly asserts a violation of the Fourteenth Amendment.  Consequently, the court need not consider the issue further.

of force.  Defs.' Mem. 13-15.  The plaintiff responds that
defendants Miller and Smith admitted to receiving no training
regarding the handling of disabled arrestees.  Pl.'s Resp. 11-
12.  Furthermore, the plaintiff contends that defendant Sheriff
Hannah observed the use of excessive force as the plaintiff was
arrested.  Id.

        Under West Virginia law, claims of negligent training
and supervision are governed by general negligence principles.
See Pruitt v. W. Va. Dep't of Pub. Safety, 664 S.E.2d 175, 179,
181-83 (W. Va. 2008) (allowing claims of negligent failure to
train and supervise to proceed to trial); Neiswonger v.
Hennessey, 601 S.E.2d 69, 73 & n.3 (W. Va. 2004) (recognizing
negligent hiring, training, and supervising as a cause of action
grounded in state law and distinct from claims asserted under §
1983); Taylor v. Cabell Huntington Hosp., Inc., 538 S.E.2d 719,
725 (W. Va. 2000) ("The appellant's claim of negligent
supervision must rest upon a showing that the hospital failed to
properly supervise Nurse Grim and, as a result, Nurse Grim
committed a negligent act which proximately caused the
appellant's injury.").

        First, the plaintiff asserts that defendant Sheriff
Hannah negligently trained defendants Smith and Miller with
respect to both the use of force and the handling of disabled

arrestees.[10]   Regarding instruction in the use of force, both
defendant Smith and defendant Miller trained at the state police
academy, see Defs.' Mem. Ex. C, at 3; id. Ex. D, at 6, and
defendant Miller was provided with written materials setting
forth the Mingo County Sheriff's Department "Use of Force
Policy" upon rejoining the department, id. Ex. D, at 6.  The
plaintiff provides no indication that the training was
inadequate or that any proposed deficiency contributed to his
injuries.[11]   See Mrotek c. Coal River Canoe Livery, Ltd., 590
S.E.2d 683, 685 (W. Va. 2003) (quoting Walton v. Given, 215
S.E.2d 647, 651 (W. Va. 1975)) (observing that negligence must
not be inferred based on the existence of an injury alone).
Thus, the plaintiff fails to establish that defendant Hannah
breached his duty to train or that any potential breach
proximately caused the plaintiff's injuries, thereby rendering
summary judgment in favor of defendant Hannah appropriate with
respect to any claim of negligent training in the use of force.

_____

[10] It is unclear whether the complaint also asserts a similar
claim against the defendant Mingo County Commission.  See Compl.
¶ 36 (identifying only defendant Hannah and his chief deputy as
responsible for the "training and supervision of deputies within
the Sheriff's Department").  The court need not decide the
issue, as the municipal defendant has not moved for summary
judgment.

[11] Indeed, the court has already held that excessive force was
not applied during the plaintiff's initial arrest.  See infra
Part II.B.

In contrast, the plaintiff conclusively establishes that the defendants received no training with regard to accommodating disabled arrestees.  Defendant Hannah openly acknowledged that no such training had ever been conducted, <u>id.</u> Ex. A, at 8, and defendant Miller admitted that he would consider such training helpful.  <u>Id.</u> Ex. D, at 5.  Furthermore, the complete lack of training could easily be construed as the proximate cause of the defendants' alleged failure to reasonably accommodate the plaintiff's disability, assuming that the defendants are determined to have violated the ADA or the Rehabilitation Act at trial.  As a result, the plaintiff has presented sufficient evidence to avert summary judgment concerning his claim of negligent training with respect to accommodating disabled individuals.

Second, the plaintiff's negligent supervision claim is predicated entirely upon the assertion that defendant Hannah witnessed the excessive force employed to arrest the plaintiff and failed to intervene.  Pl.'s Resp. 12.  Again, the court has already concluded that the force exerted to initially subdue and detain the plaintiff was objectively reasonable.  <u>See</u> <u>infra</u> Part II.B.  Defendant Hannah's decision not to intercede at the point of arrest cannot be construed as a breach of his duty to properly supervise his deputies.  Accordingly, the court grants

the defendants' motion for summary judgment with respect to negligent supervision.

### III.  Conclusion

In summary, the plaintiff's motion for partial summary judgment with respect to his Counts III and IV claims asserted under the ADA and Rehabilitation Act (ECF No. 53) is denied.

The defendants' motion for summary judgment (ECF No. 56) is denied with respect to the alleged Count II violations of the Fourteenth Amendment and § 1983, which are predicated upon the plaintiff's claims that he was physically abused in the stairwell of the Memorial Building, while in custody, and the Count I claim that defendant Hannah negligently trained defendants Smith and Miller regarding the handling of disabled arrestees.

The court grants summary judgment in favor of the defendants with respect to the purported Count II violation of § 1983 and the Fourth Amendment, arising from the plaintiff's allegations that he was subjected to excessive force during his initial seizure and arrest.  The court also finds summary judgment in favor of defendant Hannah appropriate regarding the Count I cause of action for negligent training with respect to the use of force and for negligent supervision.

Thus, the following claims involving the three individual defendants have survived the various motions for summary judgment:

1) Negligent training with respect to the handling of disabled arrestees, asserted against defendant Hannah;

2) Excessive force pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment, only as relating to claims that the plaintiff was physically abused after his arrest and during his pretrial detainment; and

3) Potential violations of the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794(a).

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: May 16, 2013

John T. Copenhaver, Jr.
United States District Judge